We will move on to case number three for this morning, United States v. Qubid Coleman. Ms. Eisenman. Thank you, Your Honor. May it please the Court, Vanessa Eisenman on behalf of the defendant appellant, Mr. Qubid Coleman. Mr. Coleman's appeal, as you're aware, involves two issues, but because the government has conceded error on the supervised release conditions, unless this Court has any questions about that, I'll just be addressing the Rule 11 argument today. Pursuant to Rule 11, Mr. Coleman's guilty plea should be set aside because he did not knowingly and voluntarily accept the plea agreement, including the collateral attack waiver. So can I just turn immediately to page 4 of your brief, either version, because this paragraph 12, I mean, there may be a problem, we can discuss this, if the district court's Rule 11 colloquy, but when I read paragraph 12, it looks to me like there's a lot that talks about the fact that the defendant has received advice from counsel, or maybe even the part that precedes this in that paragraph, maybe that's the best part to look at. The agreement talks a lot about the defense attorney has discussed and explained the defendant's right to attack and so on, and then it goes on to this part that you're looking at, the decision belongs to the defendant, whether to go forward with this waiver or not, and that seems entirely correct to me. The last sentence of this paragraph that you've got in italics, negotiation of the waiver, the government has also conceded based on our Hurlough case and other cases, so the government seems to be recognizing that a 2255 can be brought based on an effectiveness of counsel in the negotiation of the plea agreement, but surely you're not challenging that the decision to accept the plea or not is the defendant's? No, I'm not challenging that, Your Honor. And the only thing this says is the lawyer's read it, the lawyer's given all the advice, but in the final analysis it belongs to the defendant. Yes, a couple of responses there. First of all, the provision that you're talking about here, to me it's very confusing. Every other decision that's laid out in the plea agreement is also the defendant's alone, yet it doesn't have this confusing language in here. If it would have just stopped after the kind of understanding those rights and having thoroughly discussed those rights with the attorney, that's what the appellate waiver has as well. We have no problem with the appellate waiver. Maybe they just were engaged in overkill. I mean, you know, these waivers are very important. They're important to the government, they're important to the defendant, whether it's an appeal waiver or a collateral attack waiver. And that's exactly what we're hearing. Maybe they got wordy, but I'm not sure that in the end it was erroneously wordy. Well, again, to me it's at the bare minimum very confusing as to why it's in this provision and not the others, as to why it's necessary at all if Jones covers that. Why have all these words in it if we know that Jones is going to say, no, anything regarding the ineffective assistance in the negotiation of the plea agreement is accepted from the collateral attack waiver, so why have all these extra words? And then at the end, Your Honors, so we've got two confusing provisions here. We've got the one talking about notwithstanding any advice you may or may not have been given. Then at the end it says accepting only those claims regarding which relate directly to the negotiation of this waiver itself. It doesn't say this plea agreement. It says this waiver, which is not the same thing as what Jones says. So, again, we have these two kind of confusing provisions. When you have that kind of confusion, that's the whole point of Rule 11. But haven't you already gotten relief on that last point in the form of the government's brief? Hasn't the government conceded that Jones applies? Well, and that, for that matter, Herlow. Yes, and that Mr. Coleman will be able to raise ineffective assistance claims regarding the negotiation of the plea agreement. Of the whole plea. So that issue is really not before us, is it? That issue is before us because Mr. Coleman still wasn't aware of that, Your Honor. No one told him what that meant. If waiver actually means plea agreement, well, then somebody needs to tell him that. And your position is he would go to trial? Our position is he would go to trial. And what's the reasonable probability that he would have gone to trial? Yeah, I understand that question, Your Honor. I do. There's a couple of things. When this court is talking about kind of a probability that he wouldn't have entered the plea, we're looking at what his knowledge was at the time of the change of plea agreement, right? And whether this, knowing what this waiver actually says, which has now taken an appeal to decide what this waiver actually says. Has anything changed since his guilty plea that makes his chances at trial better than they were when he entered the plea? Yep, similar question to what you were asking, Your Honor. Yeah, people did. So at that time, he knew that the co-defendants had already gone to trial. At his change of plea hearing, he knew that the co-defendants had already gone to trial and he knew that they had been found guilty. And we can see that, Your Honor, and we can see that there was strong evidence against him. But he also knew that he was severed from his co-defendants, which makes it a little bit more difficult on the government. And he also knows that at that time, what he's facing is a really tough choice. He either goes to trial with potentially a strong chance that he could be found guilty and be given a mandatory minimum life, but there's also a chance that he could be acquitted and that he would have no time. On the other hand, you have him going to accepting this plea agreement where he's guaranteed to get a very long sentence. There was no chance that he was going to get a minimum sentence. He was either going to get life because he didn't know whether the government was going to go forward with its substantial assistance motion. He didn't know whether the court was going to grant that substantial assistance motion had the government moved for it. And then he didn't know if it ended up being a 20% reduction, how the court was going to take that 20%. So there were a lot of ifs, and there was still a really good chance that he was going to end up with life. I mean, by now, the court didn't think much of his credibility either. That's true, Your Honor. That's true. So when he's at that plea agreement, something like a collateral attack provision, saying that no matter what happens at sentencing, you can't go back and challenge anything that your attorney did there, that might well have tipped him over the edge and said, no, you know what, that's too much. I'm going to get a really long sentence regardless if I go down this road. I'm going to take my chances, and I'm going to go to trial. Do we need something a little more concrete in the record to make that conclusion, or is just your argument that that might have been what his calculus was, enough to make the threshold that this was material? I do think I'm coming from the record with that argument, Your Honor. We know what he was facing at the time. We know procedurally how it happened, what he knew about his co-defendants and what had happened to them, what he was facing on the other side. We also know, again, that nothing in the record is indicating that he had really knowledge that he was giving up potentially, as I read it, all of his collateral claims, and as the government reads it, his ineffective assistance claims at sentencing. So I do think that that is something in the record. Also, Your Honor, I just have to note that Mr. Coleman has decided to go ahead with appealing the Rule 11 issue, even though the government is, in a sense, offering a resentencing because of the supervised release conditions. That, to me, is further indication that Mr. Coleman does want his guilty plea vacated and wants to go to trial. In the Pollack case that this Court decided, I believe probably the most recent relevant case – oh, I'm sorry. If you want to save the time, you can do so. Yeah, could I do that? Thank you. Certainly. Okay. Mr. Bohm. Good morning. Jason Bohm on behalf of the United States. May it please the Court. Mr. Coleman will be allowed to do exactly what he's complaining this plea agreement prevents him from doing, and that's raising an ineffective assistance of counsel claim on a 2255. Because he's allowed to do the very thing he says he won't be able to do, there's no reason for this Court to remand this case, even if there was error at his Rule 11 colloquy, and we don't believe there was error. So I suppose the argument that Ms. Eisenman is making, though, is if he had known that there was a 2255 waiver, even with the correct exclusion for ineffectiveness claims with the negotiation of the plea agreement, maybe that apparently his state of mind now is that he would have rolled the dice and gone to trial altogether for whatever chance of acquittal that might have given him. So it's a little bit different from just a chance of resentencing. In fact, importantly different from that. That's true, although the record doesn't support, I don't believe, the notion that there is any reasonable probability that he would have gone to trial, and it's the record below. And what the record below suggests is that Mr. Coleman tried to thwart the process against him by taking different means, and there's no credibility on his part of what he would say the chances of. What specifically are you pointing to? I realize he was difficult to work with, and competency issues were coming up and literacy issues and all of that, and that was on again, off again. But were there signals such as, I don't know, efforts to cooperate? What was it that made you think he really didn't want to go to trial? I think ultimately it was that he did cooperate with the government, and he testified at the sentencing hearing of others. We gave him a reduction in his sentence for that, even though the district court found his testimony at sentencing incredible and didn't rely on it at all in sentencing him. But the notion that he would go to trial after cooperating and after saying, on the record, I sold drugs for these guys, I just don't believe there's any evidence to support the notion that he would, in fact, go to trial because he wasn't fully informed of the plea waiver. And I would like to go back to that. Counsel said no one informed him that it wasn't just the waiver, it was the plea itself. Actually, Judge Darrow, in her colloquy with him, which I believe is at plea transcript page 12, said it was the negotiation of the plea itself, not just the waiver of 2255. But she's talking about the appellate waiver. That's the problem with her colloquy. I'm sure she was misspeaking. I have no idea. But anyway, she's only talking about the appellate waiver. But that provision, that exception, is only found in the collateral attack provision, I believe, in the plea. But she would have known that the law requires that exception anyway, whether you wrote it in or not. That's true. I'm not sure that you can piggyback that hard on. I think my point is just that we believe he was fully informed of the consequences of his plea and that both on appeal or on 2255, he would be able to challenge the ineffective assistance of counsel in negotiating the plea that he knowingly and voluntarily entered. Is your office still using the language that really doesn't seem to be comporting with Herlo? No. Since the change in the DOJ policy that is in our brief, the waiver now is just a we will not, this does not waive ineffective assistance of counsel claims, period. In your brief, you suggest that there was no error because articulating the difference between appeal and collateral attack to a non-lawyer like Coleman would be largely pointless. But it seemed to me that that argument itself demonstrates why a district court needs to both mention the waiver and ensure that the defendant understands it. Certainly, Your Honor, the best practice is to say both of them. I think our point is simply that the judge saying both of them to Mr. Coleman at that point, I'm not sure there's a meaningful difference to him and maybe to some lawyers in that. But I agree with you, the best practice is certainly to mention both of them. Well, and to say, you know, an appeal, if lawyers can't explain in plain terms what a 2255 is, and I guarantee you this is not something that's widely known, even in the educated population, much less these defendants, I mean, they need to find a way to do it. Some special problems, constitutional problems, however you say it. It is an expansion. Actually, when appeal waivers first came in, this part wasn't even in the toolbox. And I think, Your Honor, there is some reliance on the fact that it's in the plea agreement, that the defense attorney said we read it word for word, I've gone over this plea agreement with them, and this court's recognized that there are adequate substitutes for it being done at the Rule 11 colloquy, and I think those substitutes are present in this case. So you're making a harmless error argument, vis-à-vis the district court's Rule 11 compliance. Yes. Unless there are any further questions, we will stand on our brief. Thank you. Apparently not, so thank you. Anything further, Ms. Eisenman? Just very, very quickly, I just want to respond to the government's argument that Mr. Coleman was informed of this. Again, as Your Honors have kind of picked up, at the plea colloquy, only the appellate waivers were mentioned, not the collateral attack waiver. Mr. Coleman struggles with literacy. There is some discussion back and forth about exactly what his literacy level is, but the district judge's most recent finding was that he was, if not illiterate, then semi-illiterate. Considering that and considering the two confusing parts of this provision, it would have been really a stretch for this court to assume that by the collateral attack waivers and by saying that there is an exception for ineffective assistance claims regarding the negotiation of the plea agreement, it actually meant waiver, but the waiver actually meant the plea agreement. What do we do with the record indicating that his lawyer did explain all of this to him? Yes. The whole point of Rule 11, Your Honor, as I believe Your Honor stated for the court in Sura, is that we can't just go from the plea agreement itself. Rule 11 says that there has to be more than that. We have to have a specific inquiry about the specific things listed in Rule 11. And considering that this is a confusing provision that's not used in other places and that's apparently not used anymore here, there needed to be some additional follow-up to have some assurance that his lawyer had cleared up any of these misunderstandings that have taken a whole appeal to decide. So thank you very much. Can I just ask one quick question from your perspective? If there's a remand for resentencing, is it your understanding that the government would still be required to make the 5K motion in the remand for resentencing in light of your client's position through this appeal? I think that would depend on how this court decides to remand the case. In this court's most recent cases, I believe it's indicated that even with supervised release conditions, it would be remanded for a full resentencing. And then my position, I guess, would be in that case that the government would not be under an obligation. If this court just remanded to fix the supervised release conditions, then I believe that everything else could possibly stand. So I guess it would depend on what this court decided to do. And what are you asking for for your client? We have discussed these options with Mr. Coleman, and he has asked that in the alternative he would ask for a full resentencing. Okay. Okay. Thank you very much. Thank you very much. You were appointed, were you not? Yes. So we appreciate your service to your client in the court. And thanks as well to the government. We'll take the case under advisement.